673 So.2d 721 (1996)
STATE of Louisiana
v.
Kendrick FISHER.
No. 95 KA 0430.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
*723 Doug Moreau, District Attorney, Monisa L. Thompson, Assistant District Attorney, Baton Rouge, for Plaintiff-Appellee State of Louisiana.
Edward R. Greenlee, The Office of Public Defender, Baton Rouge, for Defendant-Appellant Kendrick Fisher.
Before WATKINS, FOIL, JJ., and TANNER, J. Pro Tem.[1]
WATKINS, Judge.
Kendrick Fisher was indicted for second degree murder in violation of LSA-R.S. 14:30.1 and pled not guilty. After trial by jury, he was convicted as charged and sentenced to serve a term of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence, but with credit for time served. Fisher appealed, urging four assignments of error, the first of which was expressly abandoned. We affirm.

Sufficiency of the Evidence
By his third assignment of error, Fisher claims that the evidence presented at trial was insufficient to support the conviction.[2] Fisher does not contest the fact that he killed Timothy Dunn on the evening of February 20, 1994. He claims, however, that the state failed to establish beyond a reasonable doubt that he did not act in self-defense.
In addressing a challenge to the sufficiency of the evidence, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988), citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In this case, the state was obliged to prove each element of second degree murder, which is defined by LSA-R.S. 14:30.1 in pertinent part as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Specific criminal intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Bourque, 622 So.2d 198, 231 (La.1993). In homicide cases, when a defendant claims self-defense, the state has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. State v. Pizzalato, 93-1415, p. 3 (La.App. 1st Cir. 10/7/94), 644 So.2d 712, 714; writ denied, 94-2755 (La. 3/10/95), 650 So.2d 1174. LSA-R.S. 14:20(1) provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. On appeal, the relevant inquiry is whether or not, after viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found beyond a reasonable doubt that the defendant did not act in self-defense. State v. Harris, 618 So.2d 945, 949 (La.App. 1st Cir.1993).
Fisher, an undergraduate student at Southern University in Baton Rouge, Louisiana, testified that he had never seen Timothy Dunn until two days before the shooting. Fisher stated that on the evening of February 18, 1994, he and a friend were outside Jones Hall (a dormitory) on the SU campus when Fisher's friend started talking to a young lady. Fisher moved aside so the other two could talk privately. At this point, according to Fisher's testimony, Dunn and two or three other men approached him and asked for the time, forming a half-circle around him. Fisher asked what was wrong *724 because they had "angry looks" on their faces. The men "began to make verbal threats," so Fisher "busted" his way through them and walked away. Fisher stated that he was frightened by this incident, but he did not report it to the authorities because he had no concrete information to give them.
Fisher stated that on the night of the shooting, February 20, 1994, he was again outside Jones Hall. Still frightened by the Friday night incident, he was carrying a gun he had purchased when he lived in Texas. He noticed a Jeep "going slow" and then heard someone in the front passenger seat say, "There he goes, don't kill him just shoot him in the leg." Dunn emerged from the back door of the jeep and ran towards Fisher, repeatedly saying, "Give it up." Dunn then pulled a gun from his waistband and pointed it toward Fisher. Fisher pulled his own weapon, fired two or three shots and then ran into the dorm. Inside, he told a friend, Jamal Franklin, what had happened and asked him to take the gun; Franklin refused. Somewhat later, Fisher emerged from the dorm and threw the gun into a lake. After consulting with relatives and hearing on the 10:00 news that Dunn was dead, Fisher turned himself in to the campus police. He maintained to the police that, although he shot Dunn, he did so in self-defense.
Fisher's testimony concerning the events of the Friday evening preceding the shooting was uncorroborated. Orlando Maurice McKinley, a friend of Dunn's who was present at the shooting, testified that Dunn was not the type of person who would have threatened anyone in the way that Fisher described.
Fisher's statement that Dunn pulled a gun on him was directly contradicted by no fewer than five witnesses, each of whom testified that Dunn was unarmed. Fisher's testimony that Dunn was running towards him in a threatening manner when he was shot was likewise contradicted by several witnesses. None of the witnesses present at the scene heard anyone say anything to the effect of, "Don't kill him, just shoot him in the leg." Betty Tillman, who was standing near Dunn when he was shot, testified that Fisher "just walked up on [Dunn] and shot him," and then shot Dunn in the back after he had already been knocked down by previous shots. Medical testimony also indicated that one of the bullets struck Dunn in the back.
Thus, the jury in this case heard from a number of witnesses whose testimony directly contradicted Fisher's. It is well settled that the trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Breitung, 623 So.2d 23, 26 (La.App. 1st Cir.), writ denied, 626 So.2d 1168 (La.1993). The reviewing court must defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. State v. Mussall, 523 So.2d at 1311. Reviewing the record before us in the light most favorable to the prosecution, we are convinced that a rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of this crime were established and that Fisher did not act in self-defense. We thus find no merit in this assignment of error.

Closing Argument
In his second and fourth assignments of error, Fisher claims that the trial court erred in failing to admonish the jury regarding certain comments made by the prosecutor and in failing to grant his motion for mistrial.
Fisher relies upon several statutes in making his argument on these assignments. LSA-C.Cr.P. art. 770 provides that a defendant may move for a mistrial when a remark made within the jury's hearing by the judge, district attorney or a court official falls into one of four enumerated categories: 1) an irrelevant and prejudicial comment about race, religion, color or national origin; 2) a remark about another crime committed by the defendant as to which evidence is not admissible; 3) a comment about the defendant's failure to testify in his own behalf; or 4) a comment about the judge's refusal to direct a verdict. LSA-C.Cr.P. art. 771 allows the state or the defendant to request *725 that the jury be admonished to disregard irrelevant or prejudicial remarks either made by the judge, district attorney or a court official when the remarks are not within the scope of Article 770, or made by a person other than the judge, district attorney or court official regardless of whether or not the remark is within the scope of Article 770; the court may grant a mistrial on the defendant's motion if it is satisfied that an admonition is insufficient to assure the defendant a fair trial. LSA-C.Cr.P. art. 774 directs that argument shall not appeal to prejudice. Under LSA-C.Cr.P. art. 775, a mistrial shall be ordered on the defendant's motion when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Articles 770 or 771.
The prosecutorial remarks at issue occurred during the state's rebuttal closing argument. Specifically, Fisher challenges the prosecutor's statement, in response to the defense's closing argument, that it was defense counsel's job to see Fisher acquitted ("... to walk him out of here."). The defense made no objection at this time, however. The prosecutor then went on to point out to the jury several members of the victim's family who were seated in the courtroom and noted the damage to the family resulting from the crime at issue; according to Fisher's brief, the prosecutor placed his hands on family members' shoulders as he spoke. The following discussion ensued:
[Defense Counsel]: Your Honor, Defense would make a 771 motion5770, Judge, thereabouts.
The Court: 771 is an admonition.
[Defense Counsel]: 770, then
The Court: I don't see anything that Mr.I don't know of anyfall into one of those
[Defense Counsel]: Your Honor, if the Court wants to hear argument, I'd ask that the jury be excused.
The Court: I don't need any argument. I've heard what [the prosecutor] has said at this point and there are four grounds listed in that motion that are grounds for basic, for a mistrial, and he hasn't reached any of it.
[Defense Counsel]: Your Honor, Defense has asked you excuse the jury to make argument and to make a motion. Is this Court refusing?
The court then excused the jury. During the argument which followed, defense counsel first requested "instruction from the legal cannons, [sic] the cannons of ethics, that a lawyer's duty is not solely to walk his client out of the courtroom." Counsel's second argument dealt with what he referred to as the prosecutor's "appeal for sympathy" in touching the victim's mother, who was also a witness. Finally, counsel urged that the trial court's response to his motion had prejudiced his "position in this case." He concluded by asking for "instructions on the attorney's function" and for a mistrial.
The court then went through the grounds for mistrial found in LSA-C.Cr.P. art. 770 and denied the motion, finding that the prosecutor's remarks did not fall into any of the statute's enumerated categories and that the court had not prejudiced the defendant's position in front of the jury. Defense counsel specifically stated that he was not requesting an admonition. The court also declined to instruct the jury on the attorney's function.
On appeal, Fisher urges that the trial court's ruling on his motion for mistrial was based upon a misinterpretation of the law; specifically, he contends in brief that the court incorrectly interpreted LSA-C.Cr.P. art. 771 as providing only for admonitions even though that article precisely covers the objectionable language.
As the quoted portions of the record indicate, it is difficult to determine the statutory grounds upon which defense counsel's complaints were based and, accordingly, the trial court's analysis prior to ruling appears somewhat ambiguous. Generally, however, before a verdict will be overturned on the basis of improper argument, the reviewing court must be convinced the jury was influenced by the remarks and the remarks contributed to the verdict. State v. Bourque, 622 So.2d at 241. Mistrial is a drastic remedy; except in instances in which a mistrial is mandatory, it is warranted only when a trial error results in substantial prejudice to the *726 defendant depriving him of a reasonable expectation of a fair trial. State v. Thomas, 589 So.2d 555, 567 (La.App. 1st Cir.1991). Furthermore, in ruling on a motion for mistrial, the trial court has the sound discretion to determine whether or not the activity or comment is so prejudicial to the defendant that he could not receive a fair trial. Thomas, 589 So.2d at 567. After reviewing the record in the context of all applicable statutory grounds for mistrial, we are unconvinced that the trial court's ruling in this regard was in error.
In State v. Bell, 477 So.2d 759, 767-68 (La.App. 1st Cir.1985), writ denied, 481 So.2d 629 (La.1986), this Court explored the ramifications of a reference to the victim's family made by the prosecutor in closing argument. Here, as in Bell, the court instructed the jurors that statements and arguments made by the attorneys were not evidence and that they were not to be influenced by sympathy, passion, prejudice or public opinion. We are not convinced that references to the victim's family in this case in any way contributed to the verdict.
Similarly, we find no prejudice to Fisher's case in the brief comments made by the trial court in the jury's presence; nor do we find that the trial court's actions constituted tacit approval of the prosecutor's comments, as Fisher suggests in brief. The court specifically instructed the jury to disregard any impression that the court had an opinion regarding any evidence or any fact, or regarding the guilt or innocence of the accused.
Finally, we find no error in the trial court's refusal to set forth for the jury the code of ethics regarding attorneys' functions. As the court noted during the jury's absence, the prosecutor's comment was no more problematic than if defense counsel had told the jury it was the prosecutor's job "to get a conviction." In determining whether allegedly improper argument has contributed to the verdict, a reviewing court should give credit to the good sense and fair-mindedness of the jurors who have heard the evidence. See State v. Bell, 477 So.2d at 768.
Based upon our review of the record as a whole, we find no error or abuse of discretion in the trial court's refusal to grant Fisher's motion for mistrial or in its refusal to admonish or instruct the jury regarding the comments at issue.
For the reasons expressed, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We will consider the claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error despite the defendant's failure to proceed by way of a motion for post-verdict judgment of acquittal. See LSA-C.Cr.P. art. 821; State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).